**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**SUZANNE C. GIDDINGS,**
      Plaintiff,

v.                                                                      No:  3:07cv205/MCR/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
      Defendant.
_____

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Giddings' application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

**PROCEDURAL HISTORY**

Plaintiff filed her applications for benefits on March 27, 2002 alleging a disability onset date of April 1, 2000.  The applications were denied initially and on

reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on May 24, 2005 at which plaintiff was represented by counsel and testified. A supplemental hearing was held on May 24, 2005 at which plaintiff was again represented by counsel and testified. Plaintiff's mother also testified, as did a vocational expert. The ALJ rendered an unfavorable decision on October 20, 2005 (tr. 394-416) and the Appeals Council declined review (tr. 387-390), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of bipolar disorder, migraine headaches, obesity, and right carpal tunnel syndrome, but that she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; that her allegations of pain and functional limitations were not supported by the evidence in the record; that she had the residual functional capacity to perform a wide range of work activities at the medium exertional level; that she was 38 years old with a high school education and past relevant work as a dental assistant; that she was capable of performing her past relevant work as she actually performed it and as that job is customarily performed in the national economy; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is

premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or

equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## BACKGROUND

This is the second time plaintiff has brought an appeal of an adverse Social Security decision to this court. The first, *Giddings v. Barnhart*, 3:02cv496/RV/MD (N.D. Fla. 2003), resulted in affirmance of the Commissioner's decision. The undersigned submitted a Report and Recommendation (tr. 478-489) that was adopted by the District Judge on January 9, 2004 (tr. 476-77), and judgment was entered in the Commissioner's favor on January 13, 2004 (tr. 475). Plaintiff did not appeal this court's judgment. The effect of the judgment was to affirm the Commissioner's decision of February 20, 2002 (tr. 394-416). In the decision now under appeal, the ALJ specifically referred to the earlier decision, declined to reopen it, and held that the res judicata effect of the earlier decision made plaintiff not disabled as of February 20, 2002 (tr. 394-95).

To assist in putting the current appeal in context, a brief review of the earlier

case is appropriate. There plaintiff contended that her mental condition rendered her unable to work, and that the ALJ erred in rejecting the opinions of her treating physician, Dr. Jacenyik, of a licensed mental health counselor (LMHC), Mr. Gordon, and of a consulting psychiatrist, Dr. Szmurlo. The ALJ's relevant findings were (1) that Dr. Jacenyik's opinion was not entitled to great weight because she was a family practitioner, not a psychiatrist, and had not given plaintiff any psychiatric care, (2) that Mr. Gordon's opinion was not entitled to great weight because he was not a licensed psychologist and therefore not an acceptable medical source, and further that his opinion was not supported by his own records because the large part of the issues he and plaintiff addressed centered around her dysfunctional home life, and (3) that Dr. Szmurlo's opinion was not entitled to great weight because, although it put some moderate restrictions on plaintiff's abilities, it conflicted with the opinion of plaintiff's actual treating psychiatrist, Dr. Gushwa, who had placed no mental limitations on plaintiff's ability to work. This court found that the ALJ's decision was supported by substantial record evidence, and affirmed.

### PLAINTIFF'S MEDICAL HISTORY

A full review of plaintiff's medical history prior to the date of the first decision can be found in the Report and Recommendation referred to above. Here, the history will start at the res judicata date of February 20, 2002, although where relevant, reference will be made to earlier medical treatment and medical opinions.

On March 16, 2002, not quite a month after the ALJ's unfavorable decision of February 20, 2002, plaintiff was admitted to the West Florida Hospital Pavilion, a psychiatric unit, as a potential suicide. On admission she admitted to ongoing thoughts of suicide but felt that she was safer while in the hospital. There was no evidence of psychosis and her memory, concentration and attention were grossly intact. She denied current homicidal thoughts and her judgment appeared grossly

intact.  The admission diagnosis was major depression, recurrent, severe, without psychotic features.  While hospitalized she was begun on a trial of Paxil and was discharged on March 20, 2002 much improved.  At that time her affect was brighter, she was having no further suicidal or homicidal thoughts and she felt safe for discharge.  The discharge diagnosis was major depression, recurrent, with history of psychotic features (tr. 629-638).

As noted earlier, Dr. Marta Jacenyik was plaintiff's primary treating physician, and had been since at least June 2000.  During the period relevant to this appeal, Dr. Jacenyik saw plaintiff multiple times for various common medical problems.  Dr. Jacenyik frequently noted that plaintiff was depressed, or had chronic depression, or was anxious, or continued to have family problems and the like. Plaintiff's mental condition over the period from March 2002 to April 2005, according to Dr. Jacenyik, did not change significantly.  However, on August 13, 2002, Dr. Jacenyik did a "disability physical."  She noted that plaintiff was claiming disability on the basis of multiple medical problems, her most serious being depression and anxiety.  She noted that plaintiff had recently been admitted to the Pavilion for suicidal thoughts and currently complained of fatigue, difficulty getting to or staying asleep, and loss of pleasure and interest.  She felt guilty, had trouble concentrating, and forgot to take her medication. She also suffered from migraine headaches, right carpal tunnel syndrome, restless legs and hand, low back pain, sleep apnea, hypertension, polycystic ovary disease and hyperlipidemia.  Her physical examination was essentially normal except for spasm in the neck, some mild tremors in the hand, and slight rigidity in the right leg, but plaintiff's reflexes and muscle strength were intact and symmetrical.  Dr. Jacenyik's assessment was anxiety and depression, frequent migraines, right carpal tunnel syndrome, and low back pain.  She felt that plaintiff had a limited ability to do work-related activity, particularly repetitive movement of the right hand, sitting, standing, walking, lifting, carrying, handling objects, speaking

and traveling, with impaired capacity for understanding and memory, social interaction, concentration, persistence and adaptation. She indicated that "in view of the multiple problems, I do feel this patient is totally disabled at this time." (tr. 644-646).

As before, plaintiff received mental health care at The Lakeview Center in Pensacola. During the relevant time, she was first seen at Lakeview on August 7, 2002. The staff psychiatrist[1] noted that plaintiff was originally a patient of Dr. Gushwa, but had been transferred to him or her. On examination, plaintiff was pleasant and cooperative, her mood appeared dysphoric and her affect was somewhat blunted and she had no thoughts of wanting to harm herself or others. Her Paxil and Desyrel were increased and she was maintained on Depacote (tr. 699). Two months later, on October 23, 2002, plaintiff was again seen by a staff psychiatrist who noted that her mental status had not changed significantly. Plaintiff's prescription for Prozac was decreased and she was started on Effexor (tr. 707-708). She returned on January 15, 2003 and stated that she was doing much better and felt much better after having switched from Paxil to Lexapro. Her mood was much improved. Her only complaint was that she still felt tired and had trouble staying awake during the day. On mental status examination she was euthymic, her affect was more animated, her speech was spontaneous, relevant, and goal oriented, and her insight and judgment appeared to be fair (tr. 695). In September 2003 the staff psychiatrist noted that after some additional medication changes plaintiff was "doing pretty well" and "feeling a little more stable." (tr. 753). A month later she was essentially unchanged (tr. 752).

Two months later, on December 19, 2003, plaintiff appeared more depressed

---

[1] Records from Lakeview are not always clear concerning who met with the plaintiff on any particular occasion. The entries are signed by either of the ARNPs who monitored plaintiff's medications, Patricia Christie or Jason Jones. The entries are also signed by one of several "Staff Psychiatrist[s]" whose name is not typed and whose signature is typically indecipherable. It is thus unclear whether the psychiatrist actually saw the plaintiff on any particular visit.

with a blunted affect. There was no evidence of psychosis and her judgment and insight were fair. Plaintiff was continued on her medication and advised to return in two months (tr. 750-751). She returned on January 26, 2004, unimproved. The staff psychiatrist started her on Geodon for mood swings. Then, on February 12, 2004, plaintiff was voluntarily admitted to the Crisis Stabilization Unit at Lakeview for depression and suicidal thoughts with a plan to drive off a cliff. She was hospitalized for four days and discharged improved. Her affect was brighter, she denied any thoughts of hurting herself and did not show any acute depression, anxiety, or manic symptoms (tr. 756-758). While hospitalized, she reported that over the previous two months she had been getting more depressed, crying, lying on the floor, saying she wanted to die, getting angry and agitated, and breaking things. She felt that the Geodon had made her symptoms worse and she had a manic episode while at home (tr. 793-795).

After being released from the Crisis Stabilization Unit plaintiff's condition improved. On March 16, 2004 she reported that she was doing better (tr. 747); on July 1, 2004 she reported that she was doing well and that things had cleared up (tr. 744); on October 1, 2004 she reported that she wanted to work but always got fired because of stress (tr. 883); on December 3, 2004 she reported that she was doing quite well (tr. 881-882); on January 26, 2005 she showed some improvement (tr. 879); on March 23, 2005 she reported that things were going well (tr. 878); and on April 12, 2005, she reported that she was doing a bit better (tr. 877). At each of the foregoing visits to Lakeview plaintiff frequently discussed her problems concerning her stepfather and with her son, which are reflected as ongoing problems throughout the medical history in the current administrative transcript.

Plaintiff was also treated by Thomas Syverson, M.D., for headaches. She had been seeing Dr. Syverson since as early as June 1999. During the relevant time, from July 2002 to December 2004 she saw Dr. Syverson six times, and each time

was noted to be doing fairly well with her headaches (tr. 759-761, 691-692, 887).

A hearing before the ALJ was held on October 26, 2004. The ALJ determined after the hearing that a neurological consult and a psychiatric consult were in order. Accordingly, plaintiff was seen on February 2, 2005 by Daniel Bader, M.D., a neurologist. Dr. Bader found that there was no evidence of motor deficit or sustained disturbance of gait, station, fine or gross movements; no evidence of paravertebral muscle spasm, no reflex abnormalities or loss of motion in the spine or any sensory or motor abnormalities, and that plaintiff's gait was normal and her grip and fine manipulation were intact (tr. 858-861).

Plaintiff was also seen by evaluation on February 8, 2005 by Martha Sarasua, M.D., a psychiatrist. Plaintiff gave a history of mental illness dating back to her teenage years. Her main symptoms have been depression, manic episodes, mood swings, anxiety, paranoid ideation, auditory and visual hallucinations and suicidal ideations. On mental status examination, plaintiff was noted to have normal speech, moderate anxiety and moderate depression. Her affect was sad and she was crying. There were no hallucinations, delusions, or paranoid ideation, and she was not suicidal. Dr. Sarasua's diagnostic impression was bipolar disorder, depressed, moderate; panic disorder with agoraphobia; polysubstance dependance in long term remission; and dementia (tr. 867-869). Dr. Sarasua felt that plaintiff had a long history of multiple major medical conditions with bipolar disorder; that her clinical course had included both depressed episodes severe enough to cause suicide attempts and manic episodes which have included psychotic symptoms; that over the past ten years her course had been one of deterioration and functioning due to her mental illness following a long, stable work history; that bipolar disorder is a chronic, life-long psychiatric illness requiring ongoing psychiatric care and medication, and given plaintiff's history of hospitalizations, her prognosis was poor. Dr. Sarasua noted that plaintiff had cognitive deficits and balance problems which

were serious enough to require her to hold onto walls and which made it difficult to walk and navigate stairs. She had recently begun to have serious problems with her concentration and memory and cognitive deficits were apparent on examination. Dr. Sarasua felt that it would be difficult for plaintiff to keep a work schedule or perform even simple repetitive tasks given the unpredictability of her emotional state (tr. 870-871).

A supplemental hearing was held before the ALJ on May 24, 2005. The vocational expert testified that if plaintiff's testimony and that of her mother were found to be credible, there would be no work available that plaintiff could perform. The same was true if the ALJ accepted the opinion of either Dr. Jacenyik or Dr. Sarasua.

## DISCUSSION

The fundamental basis of plaintiff's appeal here is that the ALJ relied on the five year old report from Dr. Gushwa, who had not seen the plaintiff since August 2000 (eighteen months prior to the res judicata date), and pointedly ignored the opinions of all other treating and examining physicians who had seen or treated plaintiff since that time, and further ignored two hospitalizations for suicidal tendencies. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record. The plaintiff's contentions here are well founded, and the ALJ's decision was not supported by substantial record evidence.

Dr. Jacenyik has been the plaintiff's primary treating physician since June 2000. In the first application and resulting appeal here, the undersigned found that

Case 3:07-cv-00205-MCR-MD   Document 21   Filed 04/01/08   Page 11 of 14

Page 11 of 14

the ALJ's decision discounting Dr. Jacenyik's opinion that plaintiff was disabled was supported by substantial record evidence because a treating psychiatrist at Lakeview, Dr. Gushwa, felt otherwise. In August, 2000 Dr. Gushwa restricted plaintiff only to not doing shift work. That was eighteen months before the res judicata date of the first application. Since that time, plaintiff has been hospitalized twice for suicidal ideation, with specific suicidal planning. She has not been seen by Dr. Gushwa, but by other staff psychiatrists at Lakeview, none of whom have opined that plaintiff is unrestricted in her activities. Rather, they have seen her regularly for medication adjustments and have never given a diagnosis other than bipolar disorder and depression.

Then, after the October 2004 hearing the ALJ determined that an independent psychiatric examination was needed, and plaintiff was seen by Dr. Sarasua, a psychiatrist. Dr. Sarasua very pointedly opined that plaintiff had a long history of mental illness which had worsened in recent years, and that she was effectively unemployable. In the ALJ's decision, he gave "no determinative evidentiary weight" (emphasis added) to Dr. Sarasua's opinion (tr. 408). He reasoned that (1) Dr. Sarasua noted cognitive deficits on examination but did not specify what those cognitive deficits were, (2) Dr. Sarasua noted that plaintiff had recently begun having serious problems with concentration and memory, but this was the opposite of what was reported to ARNP Jones a month later, (3) Dr. Sarasua documented no significantly abnormal mental status examination findings, (4) Dr. Sarasua relied solely on the plaintiff's subjective report during the interview, and (5) although Dr. Sarasua said she had reviewed the records from Lakeview, it was obvious that she did not because had she done so, she would have reached a different opinion.

Not a single one of these justifications for totally rejecting the opinion of Dr. Sarasua is justified. Dr. Sarasua's report show administration of the MMSE (Mini-Mental State Examination) with a score of 23 out of 30, which indicates moderate

cognitive deficits (tr. 869). Other than saying that Dr. Sarasua did not identify the cognitive deficits, the ALJ did not explain why he discounted the test results. That is no justification at all. Dr. Sarasua is a psychiatrist; the ALJ is not.

It is true that plaintiff reported that she was doing well on her next visit to Lakeview (tr. 878), but this is entirely in keeping with the cyclical nature of manic-depressive disorder, as Dr. Sarasua plainly stated (tr. 870). Dr. Sarasua did in fact document abnormal mental status findings (moderate anxiety and depression, affect sad and crying, GAF 45, no current suicidal ideation but a history of same during manic episodes (tr. 869)). It is also true that Dr. Sarasua relied on plaintiff's subjective complaints, but that is hardly surprising in the psychiatric field, and Dr. Sarasua had concrete evidence of two hospitalizations for crisis stabilization after suicidal ideations with planning. Finally, after accusing Dr. Sarasua of lying about having reviewed the Lakeview records (reasoning that if she had reviewed the records she would have agreed with the ALJ), the ALJ simply found that his interpretation of those records was correct. This is the classic case of the ALJ substituting his medical diagnosis for that of a physician. "An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians. . . ." *Marbury v. Sullivan*, 957 F.3d 837 (11th Cir. 1992) (concurring opinion).

In the appeal of the denial of plaintiff's first application, the undersigned recommended sustaining the ALJ, although not without reservations. In this appeal it is clear that plaintiff's condition has worsened significantly, but the ALJ still finds plaintiff not disabled based on his unsupported rejection of Dr. Sarasua's opinions, and his reliance on a one-time, five year old report by Dr. Gushwa. Plaintiff's condition has obviously deteriorated and the ALJ elected to ignore that fact. Consequently, the ALJ's decision was not supported by substantial record evidence, and plaintiff is entitled to reversal.

**This court has the authority to** "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  Title 42 U.S.C. § 405(g).  Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary.  It is the law of this Circuit that where the ALJ fails properly to discount the opinion of the treating physician, he is held as a matter of law to have accepted it as true.  *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).  When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made.  The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*.  Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983).

Dr. Sarasua was not a treating physician, but Dr. Jacenyik was.  Dr. Sarasua's opinions fully supported the opinions of Dr. Jacenyik.  Therefore, the ALJ's rejection of Dr. Jacenyik's opinion on the ground that she was not a psychiatrist fails because her opinion was endorsed by the very independent examining psychiatrist the ALJ determined was indicated after the October 2004 hearing.  Moreover, the vocational expert testified that if Dr. Sarasua's opinion was credible, plaintiff was unemployable.  Therefore, the evidence has been fully developed, and points unequivocally to a finding of disabled.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED, that the Commissioner be directed to compute and pay disability benefits to plaintiff, beginning as of February 21, 2002, based on her March 27, 2002 applications for disability insurance benefits and SSI benefits, and that judgment be entered in plaintiff's favor.

At Pensacola, Florida, this 1st day of April, 2008.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).